# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ILKA MARSHALL, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:11-722 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| | § | |
| *Defendant.* | § | |

## REPORT AND RECOMMENDATION

Plaintiff Ilka Marshall ("Marshall") brings this action under 42 U.S.C. § 405(g), seeking review of a decision denying her application for disability-based benefits under the Social Security Act. Complying with General Order # 18, the parties join issue through competing briefs.[1] Marshall requests judgment reversing and remanding the case for an award of benefits, or, alternatively, further proceedings (Dkt. No. 15); the Commissioner of the Social Security Administration ("Commissioner") requests affirmance. (Dkt. No. 16).

## I. Background

Marshall applied for disability insurance ("DIB") and supplemental security income ("SSI") benefits claiming disability due to: *generalized seizure*

---

[1]    General Order #18 is dated September 23, 2003 (superseding January 24, 2002 and September 19, 2001 general orders). (Dkt. No. 3).

*disorder* and *migraine headaches*. (T. 95-100, 129).[2]  After being denied benefits initially (T. 47-57), Marshall requested a hearing before an administrative law judge ("ALJ").  (T. 58-59).  ALJ Robert Ringler ("ALJ Ringler") conducted an evidentiary hearing in Albany, New York, on August 25, 2010.  (T. 10, 22-46). Marshall was represented by counsel, Michael J. Keenan, Esq., at that hearing.

On November 19, 2010, ALJ Ringler denied Marshall's applications. (T. 10-18).  Marshall appealed to the Appeals Council of the Social Security Administration's Office of Hearings and Appeals, and, in connection therewith, submitted new evidence not presented earlier to ALJ Ringler.  The Appeals Council acknowledged receipt of the evidence, but nonetheless denied Marshall's request to review.  (T. 1-6).  This rendered ALJ Ringler's opinion the final decision.  *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

Marshall timely instituted this case *pro se* on June 27, 2011.  (Dkt. No. 1). Marshall attached to her complaint a two-page letter and approximately twenty pages of evidentiary documents. (Dkt. No. 15., pp. 3-21).  In the letter, Marshall describes in vivid detail her current symptoms and their effects.  The attached documents consist of updated physician progress notes, and an updated physician report, all dealing with Marshall's current condition.  (*Id.*).

## II.  Preliminary Discussion

An initial discussion of the Social Security programs at issue, the administrative decision-making process (including certain terms of art) and the nature of judicial review will aid comprehension of Marshall's underlying claim,

---

[2]  "T." followed by a number refers to the page of the administrative record.  (Dkt. No. 12).

ALJ Ringler's decision, Marshall's challenges thereto and the undersigned's analysis.

A.    *DIB And SSI Programs; Eligibility for Benefits*

Disability Insurance benefits, authorized by Title II of the Social Security Act and funded by social security taxes, provide income to insured individuals forced into involuntary, premature retirement by reason of disability. Supplemental Security Income benefits, authorized by Title XVI of the Social Security Act and funded by general tax revenues, provide an additional resource to assure that disabled individuals' income does not fall below the poverty line. Applicants seeking benefits under either of these statutory provisions must prove "disability" within the meaning of the Social Security Act, which defines disability in virtually identical language for both programs, *viz., "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See* 42 U.S.C. §§ 423(d)(1)(A)*,* 1382c(a)(3).

While this eligibility standard is straightforward and simple in concept, it is difficult to satisfy due to the stringent and rigid disability definition established in the Social Security Act, *viz.,* inability to engage in any substantial gainful activity.   Proof of the existence of a serious disease or impairment alone does not establish a disability within the meaning of the Social Security Act. "The mere presence of a disease or impairment alone, however, is insufficient to establish disability; instead, it is the impact of the disease, and in particular any *limitations it may impose upon the claimant's ability to perform basic work functions*, that is pivotal to the disability inquiry." *Pavia v. Astrue*, No. 5:10–CV–818 (GTS/DEP), 2012 WL 4449859, at *8 (N.D.N.Y. Aug. 20, 2012)

(citing *Rivera v. Harris*, 623 F.2d 212, 215-16 (2d Cir. 1980)) (italics added); *see also Carroll v. Secretary of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir. 1983); *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983).

Neither is a showing of generalized disability sufficient. Rather, a claimant must also prove inability to engage in *any* form of substantial gainful employment. This standard is so rigorous that one federal court of appeals has described it as bordering on the unrealistic.[3] Thus, a person who might well be considered by a member of the general public, or, for that matter, by a member of a court, to be disabled in the ordinary sense of the word, may not be disabled within the specialized meaning of the Social Security Act.

B.    *Sequential Evaluation Procedure*

The law requires *individualized* determinations. *See Heckler v. Campbell*, 461 U.S. 458, 467 (1983). Hence, Commissioner Astrue generally must make both medical and vocational assessments in every case. Given the volume of claims presented on a nationwide basis, this is a huge task.

To accomplish this, the Commissioner utilizes a five-step, sequential evaluation procedure for adjudicating disability-based claims. *See* 20 C.F.R. §§ 404.1520(a), 416.920. This model is "sequential" in the sense that when a decision can be made at an early step, remaining steps are not considered. *See id*. This evaluation process has judicial approval as a fair and just way for determining disability applications in conformity with the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (citing *Heckler*, 461 U.S. at 461)

---

[3]      *See Oldham v. Schweiker,* 660 F.2d 1078, 1083 (5th Cir. 1981).

(use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations")).[4]

## 1. <u>Shifting Burdens</u>

*Claimants* bear the burden to present evidence sufficient to produce favorable findings under the first four steps. *DeChirico v. Callahan*, 134 F.3d 1177, 1179-80 (2d Cir. 1998). When they successfully carry this burden, a *prima facie* case of disability is established. *See Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984). The burden then shifts to the *Commissioner* to show in Step 5 that "there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *see also DeChirico*, 134 F.3d at 1180; *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); 20 C.F.R. §§ 404.1566, 416.966.

---

[4]     In this circuit, the Commissioner's five-step sequential procedure is described as follows:

1.     The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2.     If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3.     If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment [that meets or equals a] listed [impairment] in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4.     If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5.     If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing 20 C.F.R. §§ 404.1520, 416.920)).

## 2. Residual Functional Capacity

When making findings at Steps 4 and 5, an ALJ must first assess and articulate a claimant's "residual functional capacity" ("RFC"). This refers to what claimants can still do in a work setting despite their physical and/or mental limitations caused by their impairments and any related symptoms, such as pain. *See* 20 C.F.R. § 404.1545, 416.945(a); *see also Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (defining RFC). Administrative law judges thus decide whether applicants, notwithstanding their impairments, have physical and mental abilities to perform activities generally required by competitive, remunerative work on a regular and continuing basis. *See* SSR 96-8p, TITLE II AND XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, 61 Fed. Reg. 34474, 1996 WL 374184, at *4 (SSA July 2, 1996).

Determining RFC often is crucial to a final decision. Commendably, the Commissioner provides detailed guidance for claims adjudicators in the form of both a formal regulation and an internal policy ruling. Collectively, these directives (a) identify various ordinary physical functions to be considered in context of an ordinary work schedule, (b) require function-by-function assessments of those activities, and (c) dictate that the ultimate RFC determination account for limitations imposed by both severe and non-severe impairments. *See* 20 C.F.R. §§ 404.1545(a)(2), 404.1545(b), 416.945(a)(2), 416.945(b); SSR 96-8p, 1996 WL 374184, at **5, 7.

## 3. Credibility Assessments

Pain is an important element in disability claims, and pain evidence must be thoroughly considered. *See Ber v. Celebrezze*, 332 F.2d 293, 298-99 (2d Cir. 1964). The best-informed (sometimes *only*) source of information regarding

intensity, persistence and limiting effects of pain and other potentially disabling symptoms is the person who suffers therefrom. Testimony from claimants, therefore, is not only relevant, but necessary.

On the other hand, such testimony is subjective and may be colored by the claimant's interest in obtaining a favorable outcome. Hence, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptoms alleged. *See* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, POLICY INTERPRETATION RULING TITLES II AND XVI: EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS: ASSESSING THE CREDIBILITY OF AN INDIVIDUAL'S STATEMENTS, 1996 WL 374186, at *2 (SSA July 2, 1996); SSR 96-4p, TITLES II AND XVI: SYMPTOMS, MEDICALLY DETERMINABLE PHYSICAL AND MENTAL IMPAIRMENTS, AND EXERTIONAL AND NONEXERTIONAL LIMITATIONS, 61 Fed. Reg. 34488-01, 34489, 1996 WL 362210 (SSA July 2, 1996).

An ALJ is tasked with making credibility assessments, *i.e.*, deciding how much weight to give to claimants' subjective self-evaluations. This, perhaps, is the most difficult task for any fact-finding adjudicator, administrative or judicial. Fortunately, the Commissioner again provides explicit guidance in this area. First, a formally-promulgated regulation requires – once an impairment is identified – consideration of seven specific, *objective* factors that naturally support or impugn *subjective* testimony of disabling pain and other symptoms.[5]

---

[5] An ALJ must evaluate a claimant's symptoms, including pain, based on the medical evidence and other evidence, including he following factors:

   (i)   claimant's daily activities;
   (ii)  location, duration frequency, and intensity of claimant's pain or other symptoms;

(continued...)

Second, SSR 96–7p directs ALJs to follow a two-step process to evaluate claimants' allegations of pain:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) . . . that could reasonably be expected to produce the individual's pain or other symptoms . . . .

> Second, . . . the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities . . . .

SSR 96-7, 1996 WL 374186, at *2. The Ruling further provides that "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." *Id.*

Governing circuit law generally mirrors the Commissioner's Ruling. Thus, when an ALJ rejects a claimant's testimony of pain and limitations, he or she must provide explicit reasons for rejecting the testimony. *See Williams v. Bowen*, 859 F.2d 255, 260-61 (2d Cir. 1988); *Carroll*, 705 F.2d at 643.

---

[5](...continued)
(iii) precipitating and aggravating factors;
(iv) type, dosage, effectiveness, and side effects of any medication claimant takes or has taken to alleviate her pain or other symptoms;
(v) treatment, other than medication, claimant receives or has received for relief of her pain or other symptoms;
(vi) measures claimant uses or has used to relieve pain or other symptoms; and
(vii) other factors concerning claimant's functional limitations and restrictions due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529 (c),416.929(c).

*C.     Judicial Review of Commissioner's Decision*

Judicial review of the Commissioner's denial of Social Security benefits is limited. The court's abbreviated role is to determine whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, ___U.S.___, 130 S. Ct. 1503 (2010); *Berry*, 675 F.2d at 467; *see also* 42 U.S.C. § 405(g). When proper principles of law were applied, and when the Commissioner's decision is supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also* 42 U.S.C. § 405(g); *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004).

Under these constraints, reviewing courts cannot retry factual issues *de novo*, nor can they substitute their interpretations of administrative records for that of the Commissioner when the record contains substantial support for the ALJ's decision. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998). Rather, in such circumstances, courts must defer to the Commissioner's resolution of conflicting evidence. *See Behling v. Commissioner of Soc. Sec.*, 369 Fed. App'x 292, 293 (2d Cir. 2010) (citing *Clark v. Commissioner*, 143 F.3d 115, 118 (2d Cir. 1998) ("[I]t is up to the agency, and not this court, to weigh the conflicting evidence in the record.")).[6] Hence, reviewing courts may not overturn the Commissioner's administrative rulings just because they would have reached a different conclusion had the matter come before them in the first instance. *See Campbell v. Astrue*, 465 Fed. App'x 4, 5 (2d Cir. 2012).

---

[6]     "'[The Court] may only set aside a determination which is based upon legal error or not supported by substantial evidence.'" *Monette v. Astrue*, 269 Fed. App'x 109, 110-11 (2d Cir. 2008)(quoting *Berry*, 675 F.2d at 467); *see also* 42 U.S.C. § 405(g).

1.     Substantial Evidence

"Substantial evidence" is a term of art.  It means less than a
"preponderance" (usual standard in civil cases), but "more than a mere scintilla,"
or "such relevant evidence as a reasonable mind might accept as adequate to
support a conclusion."  *See Richardson*, 402 U.S. at 401; *Moran v. Astrue*, 569
F.3d 108, 112 (2d Cir. 2009); *Halloran*, 362 F.3d at 31.  Stated another way, to
be "substantial" evidence need only be "enough to justify, if the trial were
submitted to a jury, a refusal to direct a verdict when the conclusion sought to
be drawn from it is one of fact for the jury." *National Labor Relations Bd. v.
Columbian Enameling & Stamping Co.*, 306 U.S. 262, 299-300 (1939), *cited in*
Harvey L. McCormick, Social Security Claims and Procedures §§ 672 (4th ed.
1991).

When conducting a substantial evidence review, a court's responsibility is
"'to conduct a searching inquiry and to scrutinize the entire record, having in
mind that the Social Security Act . . . is remedial in purpose.'" *Monette v. Astrue*,
269 Fed App'x 109, 110 (2d Cir. 2008) (quoting *McBrayer v. Secretary of Health
& Human Servs.*, 712 F.2d 795, 798-99 (2d Cir. 1983)).  In this circuit, courts
consider both objective and subjective factors: (1) objective medical facts;
(2) diagnoses and opinions from treating and examining physicians;
(3) subjective evidence of pain and disability, and any corroboration by family
and neighbors; and (4) claimant's age, educational background, and work
history.  *Rivera*, 717 F.2d at 723.

2.     Reviewing Credibility Choices

Administrative law judges (who usually have the only opportunity to
observe witnesses' demeanor, candor, fairness, intelligence and manner of

testifying) obviously are best-positioned to make accurate credibility determinations. *See Campbell v. Astrue*, 465 Fed. App'x 4, 5 (2d Cir. 2012) (function of Commissioner, not the court, to appraise credibility); *see also Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) (stating that deference is given to ALJ's decision because he is in the best position to assess the claimant's credibility). Consequently, reviewing courts are loathe to second-guess and overturn credibility choices made by an administrative adjudicator. *See Pietrunti v. Director, Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) ("Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are 'patently unreasonable.'"); *Aponte v. Secretary, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) ("It is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant."); *see also see also Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("Normally, [the court] give[s] an ALJ's credibility determinations special deference because the ALJ is in the best position to see and hear the witness.").

Reviewing courts, however, cannot abdicate their statutory duty to determine whether correct principles of law were applied and whether challenged decisions are supported by substantial evidence. Consequently, even credibility choices are examined in that limited context.[7]

---

[7]     When an ALJ neglects to employ the proper legal standard, the court cannot subject his credibility determination to meaningful review. *See Meadors v. Astrue*, 370 Fed. App'x 179, 184-85 (2d Cir. 2010) (Because ALJ eschewed the two-step credibility inquiry required under 20 C.F.R. § 404.1529(c), remand required for a redetermination of claimant's RFC under the correct standard). Similarly, when an ALJ's credibility determination is based, in large part, on factual errors, the determination is not supported by substantial evidence and must be remanded. *See Horan v. Astrue*, 350 Fed. App'x 483, 485 (2d Cir. 2009) (ALJ's credibility determination based largely on factual errors not supported by substantial evidence); *Pratts v. Chater*, 94 F.3d 34, 37-38 (2d Cir. 1996) (substantial evidence did not support ALJ's decision when ALJ made several factual errors in evaluating medical evidence).

3.    Reviewing *Pro Se* Cases

Marshall, while represented by licensed legal counsel at the administrative evidentiary hearing, instituted this action *pro se*. This is entirely proper, as litigants in federal court have a statutory right to choose to act as their own counsel. *See* 28 U.S.C. § 1654. This circumstance, however, poses a special challenge to a reviewing court.

*Pro se* litigants generally are unfamiliar with legal terms of art such as "substantial evidence," and they lack expertise in arcane rules governing administrative adjudication of social security applications. Consequently, they are disadvantaged in articulating cognizable grounds for judicial review. Lenient consideration of *pro se* cases is warranted, therefore, to promote the goal of "equal justice for all" deeply imbedded in American culture.

On the other hand, courts must zealously guard their *raison d'être* as neutral, unbiased arbiters. This precludes their becoming advocates for one of the opposing parties in a suit. Thus, they cannot step into the shoes of *pro se* litigants and actively represent their interests.

Striking a fair balance is difficult because no statute, regulation or court decision prescribes a precise analytical model for reviewing *pro se* actions seeking to reverse adverse administrative decisions by the Commissioner of Social Security. Thus, the level of scrutiny necessarily rests to a great extent in the sound discretion of each reviewing court. There are general principles, however, that provide meaningful guidance.

Submissions filed by a *pro se* litigant are to be *liberally construed*, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551

U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The governing circuit court of appeals, moreover, directs that courts construe *pro se* pleadings "to raise the strongest arguments that they suggest." *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted).

Applying these principles, fundamental fairness and interests of justice require that courts not disregard obvious legal errors, especially when a lay litigant's ignorance may cause such errors to go unrecognized. Similarly, courts must engage in the "searching inquiry" prescribed by circuit law when deciding whether substantial evidence supports an administrative fact finding, whether or not a *pro se* litigant is perceptive enough to identify a specific evidentiary deficiency.

## III.  The Commissioner's Decision

ALJ Ringler utilized the sequential evaluation procedure described earlier. At Step 1, he concluded that Marshall currently has not engaged in substantial gainful employment since February 21, 2009. (T. 12). At Step 2, he found that Marshall has severe impairments consisting of epilepsy, migraine headaches, and back disorder (a condition not listed as a disabling impairment in Marshall's application). (T. 12-13, 95-100, 129). At Step 3, he determined that none of these severe impairments meets or medically equals any of the listed impairments that are presumptively disabling. (T. 13-14). At Step 4, he assessed Marshall's RFC as capacity to perform light work not involving exposure to heights, moving machinery, or driving. (T. 14). ALJ Ringler also found that Marshall might be absent from work a few days per year due to her migraine headaches. (T. 14). Additionally, at Step 4, ALJ Ringler compared Marshall's RFC with demands of her past work as a customer service

representative (as testified by Marshall[8]) and as listed for customer service representatives generally in the *Dictionary of Occupational Titles*, *Fourth Ed.*, Code No. 205.362-026, 1991 WL 671712 (G.P.O. 1991). He found that Marshall remains able to perform this work, and concluded, therefore, that Marshall "has not been under a disability," and her claim was denied.[9] (T. 17).

## IV. Points of Alleged Error

As a lay plaintiff, Marshall predictably invites the court simply to re-weigh the evidence, conclude that she is disabled, and direct the Commissioner to award benefits. Just as predictably, the Commissioner maintains that substantial evidence generally supports the ALJ Ringler's decision denying benefits. The Commissioner further argues that neither the new evidence submitted to the Appeals Council nor new evidence submitted to this court provide a basis to remand the case. (Dkt. No. 16, pp. 13-22).

## V. Analysis

Earlier, the undersigned observed that a reviewing court cannot accept an invitation to re-weigh evidence and come to its own decision regarding disability. Therefore, Marshall's earnest and good faith explanations and documentation of her perceived current disability has peripheral relevance at best. And, while the Commissioner's brief is helpful in summarizing the medical evidence and focusing the legal new-evidence issue, it is not intended or designed to be the

---

[8]    Plaintiff discussed her work history and very basics of what each job entailed–delivering and sorting mail, keyboarding, responding to telephone inquiries, etc. (T. 27-30).

[9]    ALJ Ringler's complete findings and conclusions appear on six pages, 10-17, of the administrative transcript contained in the record before the court. (Dkt. No. 12).

type of "searching inquiry" or an explication of *pro se* Marshall's "strongest arguments." Hence, the court is mostly on its own.

## A.    *Legal Error Analysis*

Correct principles of law governing administrative adjudication of Marshall's claim were set forth in Section II.*B.*, above. ALJ Ringler utilized the prescribed sequential evaluation procedure to reach a decision. When assessing Marshall's credibility and determining her RFC, he cited the applicable Regulations and Rulings (T. 14) thus indicating his awareness of and intent to follow them. Specifically, when assessing credibility, he considered the seven specific objective factors identified in the Regulation to the extent there was evidence thereof, engaged in the two-step process as required by the applicable Ruling, and provided explicit reasons for finding Marshall's subjective complaints not fully credible, as required by circuit law. (T. 14-17). Likewise, when determining Marshall's RFC, ALJ Ringler first considered the various ordinary physical functions identified in the governing regulation to the extent there was evidence thereof. He received into evidence and considered a function-by-function assessment before expressing an ultimate assessment of RFC as required by the applicable Ruling.[10]    Finally, he accounted for limitations

---

[10]    A State Agency Disability Analyst submitted a Physical Residual Functional Capacity Assessment, which contained a function-by-function assessment of the ordinary physical functions that the governing regulation requires to be considered in context of an ordinary work schedule. (T. 17, 224-229). State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. *See* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). As such, their opinions may constitute substantial evidence when consistent with the record as a whole. *Mongeur*, 722 F.2d at 1039 (report of consultative physician may constitute substantial evidence).

The function-by-function requirement, therefore, can be satisfied either by an ALJ engaging in such analysis directly or by considering a state disability examiner's expert and explicit analysis of each required function before expressing residual functional capacity in terms of exertional levels of work. *See Wells v. Commissioner of Soc. Sec.*, 338 Fed. App'x 64, 66 (2d Cir. 2009) (ALJ properly relied on nonexamining physician's assessment of claimant's RFC as it was based on medical reports and was consistent with those reports);

(continued...)

imposed by both severe and non-severe impairments, also as required by the governing Ruling. (T. 11, 14).

In sum, there is no obvious structural or legal error in ALJ Ringler's decision.

## B.   *Substantial Evidence Error Analysis*

Liberally construed and posited in its best light, Marshall's argument is that substantial evidence does not support ALJ Ringler's decision that Marshall was not disabled from February 21, 2009 (date of alleged disability onset), through November 19, 2010 (date of ALJ's decision). (Dkt. No. 15, pp. 1-2). ALJ Ringler's findings at Step 1 and Step 2 were favorable to Marshall. The court has no reason to look for error at those steps. Accordingly, the court will examine whether substantial evidence supports the findings adverse to Marshall at Steps 3 and 4.

### 1.   Step 3 and The Listings

"The Social Security regulations list certain impairments, any of which is sufficient, at step three, to create an irrebuttable presumption of disability." *DeChirico*, 134 F.3d at 1180; *Dixon v. Shalala*, 54 F.3d 1019, 1022 (2d Cir. 1995); *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are

---

[10](...continued)
*Edwards v. Astrue*, No. 5:07-CV-898 (NAM/DEP), 2010 WL 3701776, at *11 (N.D.N.Y. Sep. 16, 2010) (ALJ properly relied upon the Physical RFC prepared by the DIB analyst since the analyst is deemed to be a qualified expert in the field of social security disability); *see also*, *e.g.*, *Onishea v. Barnhart*, 116 Fed. App'x. 1, 2 (5th Cir. 2004); *Beck v. Barnhart*, 205 Fed. App'x. 207, 213-14 (5th Cir. 2006); *Delgado v. Commissioner of Soc. Sec.*, 30 Fed. App'x 542, 547-48 (6th Cir. 2002) (citing *Bencivengo v. Commissioner of Soc. Sec.*, 251 F.3d 153 (Table) (3d Cir. 2000)).

disabled."). Additionally, the Regulations provide that "if an individual has an impairment that is 'equal to' a listed impairment," that individual is disabled regardless of his or her age, education, or work experience. *DeChirico*, 134 F.3d at 1180 (quoting 20 C.F.R. § 404.1520(d)).

At Step 3, the burden is on claimants to present *medical findings* which show that their impairments match a listing or are equal in severity to a listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 530–31 (1990). To demonstrate that an impairment matches a Listing, claimants must show that their impairment(s) meet *all* of the specified criteria. *Id.*, at 530; *see also* 20 C.F.R. §§ 404.1525(d), 416.925(d). If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. *Sullivan*, 493 U.S. at 530. To satisfy this burden claimants must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1526(b), 416.926(b).

ALJ Ringler assessed Marshall's alleged impairments under Section 1.00 Musculoskeletal System, and Section 11.00 Neurological. (T. 13). Under Section 1.00, he evaluated listings-level severity of Marshall's musculoskeletal complaints (back pain). (T. 13). Under Section 11.00, ALJ Ringler appraised listings-level severity of Marshall's epilepsy and migraine headaches. (T. 13). Ultimately, ALJ Ringler found that, "[a]lthough severe, these impairments are not attended, singly or in combination, with the specific clinical signs and diagnostic findings required to meet or equal the requirements set forth in the Listing of Impairments, Appendix 1 to Subpart P, 20 C.F.R. Part 404." (T. 13).

A searching inquiry and scrutiny of the entire record reveals no substantial evidence error in ALJ Ringler's Step 3 findings. As for Marshall's

back pain, there was no medical evidence of a spinal disorder resulting in compromise of a nerve root or the spinal cord, with evidence of nerve root compression accompanied by motor loss, sensory or reflex loss and positive straight leg raising; spinal arachnoiditis manifested by severe burning or painful dysesthesia, resulting in the need for changed in position or posture more than once every 2 hours; or lumbar spinal stenosis resulting in pesudoclaudication and resulting in inability to ambulate effectively. Inasmuch as these are prerequisites for a presumptively disabling spinal disorder,[11] ALJ Ringler's decision is supported by substantial evidence.

As for Marshall's epilepsy, ALJ Ringler properly concluded that Marshall does not qualify because there is no medical evidence establishing that Marshall's seizures occurred more than once per month in spite of at least three months of prescribed treatment as required by the Listing.[12] (T. 13, 15-16). In fact, a review of the evidence reveals that, during the relevant time, Marshall experienced only *one* seizure—in February 2009. (T. 31, 339). Further, Marshall's treating physicians and Marshall's own testimony confirm that her seizure activity since that time has been well controlled through medication (*e.g.*, Keppra). (T. 42, 255, 270, 272, 282, 309). Likewise, with respect to Marshall's migraine headaches, there is no record evidence of "[d]egenerative disease not listed elsewhere, such as Huntington's chorea, Friedreich's ataxia, and spino-cerebellar degeneration . . . [w]ith disorganization of motor function or chronic brain syndrome" as required by the Listing.[13]

---

[11] *See* 20 C.F.R. Part 404, Subpt. P, App. 1, §§ 1.00(B)(2)(b), 1.04(A), 1.04(B), and 1.04(C).

[12] *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 11.02.

[13] *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 11.17.

2. Step 4 Findings: Credibility, RFC, Past Relevant Work

   a. *Credibility*

As determined earlier, ALJ Ringler applied correct principles of law when assessing credibility of Marshall's subjective testimony regarding persistence, intensity and limiting effects of her symptoms. ALJ Ringler expressly summarized the relevant evidence addressing Marshall's complaints of pain and other subjective complaints. (T. 14-17). Thereafter, he concluded:

> The medical evidence discussed above shows that the claimant's allegations of disabling impairments and pain, which are found in the claimant's disability reports and hearing testimony, are inconsistent with objective findings and subjective findings on examination. The claimant's symptoms exceed the objective findings contained in the medical records. The claimant's testimony is inconsistent with the medical evidence of record, and it is not well supported by the medical evidence of record. Accordingly, the undersigned finds that the claimant's allegations and subjective complaints are not fully credible.

(T. 17).

Marshall's allegations about the intensity, persistence, or functionally limiting effects of her pain or other symptoms were not substantiated by objective medical evidence. (T. 14). After taking into consideration the entire case record, ALJ Ringler noted numerous inconsistencies that formed the basis of his credibility finding. With regard to her seizure activity and headaches, ALJ Ringler noted that the medical records revealed that Marshall had not had any further seizures, and she only had some headaches from time to time, which are

being treated and helped with Seroquel; otherwise, Marshall was doing okay. (T. 235, 238, 240, 241-42, 270-74, 280-83).[14]

With respect to her back pain, ALJ Ringler noted that a May 2010 MRI of Marshall's lumbar spine revealed mild intervertebral disc bulge. (T. 304). There was *no evidence of local intervertebral disc herniation* or *spinal canal stenosis*. (R. 304). In June 2010, Charles Buttaci, D.O., diagnosed Marshall with back pain, with radiation down right lower limb, with *small* protrusion. (T. 285-86). She received an epidural steroid injection and only physical therapy was recommended. (T. 286).

---

[14]     Specifically, ALJ Ringler identified the following inconsistencies:

•     March 2009–Dr. Pathirana diagnosed Marshall with seizure disorder, but noted that she was stable at that time and taking Topamax regularly. (T. 241-42).
•     June 2009–Dr. Pathirana diagnosed Marshall with headaches and generalized weakness, but there was uncertain etiology and no signs of depression. (T. 240).
•     August 2009–Dr. Pathirana noted that Marshall had no recent seizure activity. Upon examination, Marshall appeared comfortable and in no apparent distress. Marshall complained of malaise and fatigue but denied any blurry vision or double vision, nausea, vomiting, or abdominal pain. Marshall advised that she had been having migraine headaches from time to time. Marshall was otherwise stable and advised to return as needed. (T. 238).
•     October 2009–Dr. Pathirana noted that Marshall had no recent seizure activity. She complained of acid reflux. Marshall denied malaise, fatigue, blurry or double vision, nausea, vomiting, or abdominal pain. She appeared comfortable and in no apparent distress. (T. 235).
•     December 2009–Registered physician's assistant noted that Marshall's seizures were well controlled with Keppra and that she was doing well taking Seroquel for migraine headaches. She was observed to be obese, alert, and in no acute distress. (T. 273-74).
•     January 2010–Dr. Pathirana noted in a comprehensive physical examination that Marshall reported doing fairly well at that time. She further reported that she had not had any seizures since taking Keppra. She reported having off and on headaches, but, at that time, denied having headache, dizziness, light-headedness, or change in vision. She was in no acute distress. (T. 280-83).
•     April 2010–diagnostic imaging of Marshall's cervical spine was conducted to assess for degenerative changes and foraminal stenosis causing neck pain and headaches. The results of the examination were negative; there were no degenerative changes and disc spaces were normal. (T. 305).

Because ALJ Ringler's credibility determination is supported by substantial evidence, it must be upheld. *See Pietrunti*, 119 F.3d at 1042; *Aponte*, 728 F.2d at 591.

### b. *Residual Functional Capacity*

ALJ Ringler ultimately determined that Marshall, a younger woman, has the residual functional capacity to perform light work not involving exposure to heights, moving machinery, or driving. (T. 14). ALJ Ringler also found that Marshall might be absent from work a few days per year due to her migraine headaches. (T. 14).

Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of up to ten pounds, or involves a good deal of walking or standing, or involves sitting most of the time with some pushing and pulling of arm or leg controls. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b). No objective medical evidence or medical source opinion in the record before ALJ Ringler suggests that Marshall is unable to meet these requirements during an ordinary work day. The only limitations suggested by professional medical opinion were incorporated into ALJ Ringler's RFC which precludes Marshall from working at heights, operating machinery or driving (T. 14, 17, 227), and allows for absence from work a few days a year when suffering from migraine headaches (T. 14).

There is, therefore, no basis for concluding that ALJ Ringler's RFC determination lacks evidentiary support.

### c. *Past Relevant Work*

ALJ Ringler next compared Marshall's residual functional capacity with the demands of her past work as a customer service representative and found

that Marshall was able to perform this work.  (T. 17).  During the hearing, Marshall testified that she worked as a customer service representative for several companies, performing tasks such as sorting mail, picking up mail, keyboarding, and talking on the phone.  (T. 27, 29-30). Citing to DOT Code 205.362-026, Specific Vocational Profile (hearing testimony), ALJ Ringler compared Marshall's RFC with the physical and mental demands of a customer service representative as actually performed, normally performed, and generally performed.  (T. 17).

ALJ Ringler's reliance on the DOT to determine work demands of a customer service representative was well within his discretion.  "Because of the detailed information appended to each DOT code, the codes are useful for determining the type of work a disability applicant can perform."  *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 446 (2d Cir. 2012).  "In fact, the DOT is so valued that a VE whose evidence conflicts with the DOT must provide a 'reasonable explanation' to the ALJ for the conflict."  *Id.* (citing SSR 00–4p, POLICY INTERPRETATION RULING: TITLES II AND XVI: USE OF VOCATIONAL EXPERT AND VOCATIONAL SPECIALIST EVIDENCE, AND OTHER RELIABLE OCCUPATIONAL INFORMATION IN DISABILITY DECISIONS, 2000 WL 1898704 (Dec. 4, 2000)). Consequently, because Marshall's submissions and testimony confirm that her previous work duties are substantially the same as light, skilled duties of a customer service representative, there is no basis to conclude that ALJ Ringler's determination was improper.

3.     <u>Summary of Substantial Evidence Analysis</u>

In sum, there is substantial evidence of record to support ALJ Ringler's conclusions that:  (1) Marshall's impairments did not meet or equal the criteria set forth by the Listing of Impairments; (2) Marshall's symptoms were not of

such severity and intensity as to preclude *all* work activity; (3) Marshall was able to perform light work,[15] except that she cannot work around heights, heavy machinery, or drive and may be absent a few days per year due to migraine headaches; and (4) Marshall could perform her past relevant work as a customer service representative. (T. 13-17). For these reasons, ALJ Ringler properly determined from evidence before him that Marshall did not suffer from a "disability," as that term is defined in the Act, from February 21, 2009, through November 19, 2010. (T. 17-18).

C.    *New Evidence Error Analysis*

As mentioned earlier, Marshall submitted to both the Appeals Council and this court new evidence not presented to ALJ Ringler. Under the Act, a claimant may "submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision." *Perez v. Chater*, 77 F.3d 41, 44-45 (2d Cir. 1996). While evidence submitted to the Appeals Council becomes part of the administrative record, the Appeals Council, in reviewing a decision based on an application for benefits, will consider new evidence only if (1) the evidence is material, (2) the evidence relates to the period on or before the ALJ's hearing decision, and (3) the Appeals Council finds that the ALJ's decision is contrary to the weight of the evidence, including the new evidence. *See id.*; *see also* 20 C.F.R. §§ 404.970, 416.970 ("[T]he Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision.").

---

[15]    Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of up to ten pounds, or involves a good deal of walking or standing, or involves sitting most of the time with some pushing and pulling of arm or leg controls. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b).

Similarly, under 42 U.S.C. § 405(g), a reviewing court may at any time order additional evidence to be taken before the Commissioner. Pursuant to that provision, claimants must show, among other things, that the new evidence they seek to introduce is "material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative." *Lisa v. Secretary of Health & Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991); *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988). In addition, materiality requires "a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." *Lisa*, 940 F.2d at 43. "New" evidence is that which adds to the record and is "not merely cumulative." *Id.* Good cause is met when "the evidence surfaces after the [Commissioner's] final decision and the claimant could not have obtained the evidence during the pendency of that proceeding." *Id.* at 44

1. <u>New Evidence Submitted to the Appeals Council</u>

Marshall, through her counsel, submitted on February 28, 2011, over 30 pages of medical records to the Appeal Council for review. (T. 316-50). These new records consisted of the following:

> Priyangika Pathirana, M.D., records dated 10/7/10;
> Albany Medical Center Hospital records dated 12/16/10;
> Charles Buttaci, D.O. records dated 12/22/10; and
> Rossella Cavaliere, M.D. records dated 1/18/11

(T. 316). The only evidence which relates to the period *before* the ALJ's decision and to Marshall's health is Dr. Pathirana's treatment notes on October 7, 2010. (T. 318-21). These notes relate to a follow-up visit after a recent hysterectomy. (T. 318-19). At that time, Marshall was reported as *doing fairly well* and *denied malaise or fatigue.* (T. 319-20). Nothing about this report suggests that ALJ Ringler's decision was contrary to the weight of the evidence.

The other evidence submitted to the Appeals Council post-dates ALJ Ringler's decision. (T. 323-24, 344-45, 347-49). Even the January 2011 neurological evaluation prepared by Dr. Cavaliere with respect to Marshall's *current* condition does not impugn ALJ Ringler's decision. Dr. Cavaliere merely precluded Marshall from driving or bathing unsupervised. (T. 348). ALJ Ringler also precluded Marshall from driving. (T. 14).

Because the bulk of the evidence submitted by Marshall to the Appeals Council was neither new nor material, it would be unreasonable to believe that it would have changed ALJ Ringler's decision. Consequently, the Appeals Council did not err in refusing to review it. (T. 1-2, 4, 5).

2. New Documents Submitted to the Court

The letter submitted by Marshall to the court at the time her complaint was filed consists mostly of her subjective update of her condition. Attached to the letter were documents consisting of 2011 progress notes from Dr. Cavaliere, as well as a May 2011, letter and report from Dr. Cavaliere. (*Id.*). These documents, collectively, demonstrate that (a) Marshall proceeds in good faith and on a sincere and urgent conviction that she is, indeed disabled, and (b) some of her severe impairments may be progressively worsening. But, within the confines of limited judicial review, these documents are not material because they describe conditions existing *after* ALJ Ringler's decision (*i.e.*, November 19, 2010) and, thus, are not relevant to Marshall's condition *during the period for which benefits were denied* (*i.e.*, February 21, 2009 through November 19, 2010). Under these circumstances, the new documents submitted to the court by Marshall do not warrant a remand of the case for reconsideration of benefits,

although they may be relevant and beneficial to Marshall in a subsequent application. *Lisa*, 940 F.2d at 43; *Tirado*, 842 F.2d at 597.

## VI. Recommendation

The Commissioner's decision denying disability-based benefits should be **AFFIRMED**.

## VII. Objections

Parties have fourteen (14) days to file specific, written objections to the Report and Recommendation. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THE REPORT, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Graham v. City of New York*, 443 Fed. App'x 657, 658 (2d Cir. 2011); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Signed on the ___17___ day of ___October___ 2012.

_____
Earl S. Hines
United States Magistrate Judge